IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| CASSANDRA RENEE FIELDS,  )<br>  )<br>    Plaintiff,  )<br>  )<br>    v.  )<br>  )<br>CAROLYN W. COLVIN,  )<br>Acting Commissioner of Social Security, )<br>  )<br>    Defendant.  ) | CIVIL ACTION NO. 3:12cv421-WC |

**MEMORANDUM OPINION**

**I.    INTRODUCTION**

Plaintiff, Cassandra Renee Fields, applied for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq*, and supplemental security income ("SSI") payments under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq*. Her applications were denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued a decision in which he found Plaintiff not disabled from the amended alleged onset date through the date of the decision. Tr. 28. The Appeals Council rejected Plaintiff's request for review of the ALJ's decision. Tr. 1-5. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social

is now before the court for review under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 8); Def.'s Consent to Jurisdiction (Doc. 9). Based on the court's review of the record and the briefs of the parties, the court AFFIRMS the decision of the Commissioner.

## II.   STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2006).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the Listing of Impairments]
> (4) Is the person unable to perform his or her former occupation?

---

Security matters were transferred to the Commissioner of Social Security.

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

> (5) Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] (grids) or call a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

experience.  Each factor can independently limit the number of jobs realistically available to an individual.  *Phillips*, 357 F.3d at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The court's review of the Commissioner's decision is a limited one.  This Court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  *See also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.").  A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings.  . . .  No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

**III.    ADMINISTRATIVE PROCEEDINGS**

Plaintiff was forty-three years old at the time of the hearing before the ALJ. Tr. 51. Plaintiff has a twelfth grade education and six months of technical school. Tr. 22; 38. Plaintiff's past relevant work experience was as a "hand packager," "spray painter II," "greenhouse laborer," and "daycare worker." Tr. 27; 56. Following the administrative hearing, and employing the five-step process, the ALJ found Plaintiff "has not engaged in substantial gainful activity since November 29, 2007, the amended alleged onset date." (Step 1) Tr. 20. At Step 2, the ALJ found that Plaintiff suffers from the following severe impairments: "degenerative disc disease of the lumbar and cervical spine; mild obesity (5'3" tall, 173 pounds); and Bipolar/schizoaffective disorder." *Id.* The ALJ then found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." *Id.* Next, the ALJ found that Plaintiff

> has the residual functional capacity to perform nearly the full range of [l]ight work as defined in 20 CFR 404.1567(b) and 416.967(b), except with the following limitations: the Claimant can sit for 2 hours without interruption, and for a total of 6 hours in an 8-hour workday; stand and walk in a combination of these activities for 1-2 hours without interruption, and for a total of 6 hours in an 8-hour workday; stand and walk in combination of these activities for 1-2 hours without interruption, and for a total of 6 hours in an 8-hour workday; she can lift/carry, push/pull frequently up to 10 pounds and occasionally up to 20 pounds; frequently use both hands for simple grasping and fine manipulation; use both feet without limitations for repetitive movements such as operating foot controls or push/pull; she can occasionally bend, stoop, crawl, climb, use stairs, crouch, kneel, and balance; no climbing of ladders/ropes/scaffolds; no activities around hazardous machinery; and no activities involving

> unprotected heights. She is also restricted from extremes in temperature and vibration.  The claimant occasionally experiences a mild/moderate degree of pain, which occasionally interferes with concentration, persistence, or pace. In addition, the claimant has the following mental limitations: she can understand, remember and carry out simple instructions over an 8-hour workday with routine breaks; she can concentrate for two hours; contact with co-workers, supervisors, and the general public should be casual and non-confrontational; and changes in the workplace should be introduced slowly.

Tr. 21.  The ALJ then concluded that Plaintiff "is unable to perform any past relevant work." (Step 4) Tr. 26.  At Step 5, the ALJ found that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity," and after consulting with a VE, "there are jobs that exist in significant numbers in the national economy that the claimant can perform."  Tr. 27.  The ALJ identified the following occupations as examples:  "small product assembler," "cleaner/housekeeper," and "inspector/hand packager." Tr. 27.[5]  Accordingly, the ALJ determined that Plaintiff "has not been under a disability, as defined in the Social Security Act, from November 29, 2007, the amended alleged onset date, through the date of th[e] decision." Tr. 28.

## IV.   PLAINTIFF'S CLAIMS

Plaintiff presents two issues for this court's consideration in review of the ALJ's decision:  1) whether "[t]he Commissioner's decision should be reversed based on his failure to fulfill his duty to develop the record by not ordering a consultative examination in this case for the purpose of establishing an appropriate RFC"; and 2) whether "[t]he

---

[5] All of these positions were in the light, unskilled level.  Tr. 56.

Commissioner's decision should be reversed, because the ALJ improperly rejected Ms. Fields' testimony concerning the effects and resulting limitations imposed by the combination of her medically determinable impairments." Pl.'s Br. (Doc. 13) at 6-7.

## V.   DISCUSSION

### A.   *Whether the ALJ failed to fulfill his duty to develop the record by not ordering a consultative examination.*

Plaintiff challenges the ALJ's RFC determination, arguing "[t]he ALJ cites to absolutely no **medical evidence** in support of his conclusions of the severity of the limitations imposed by Ms. Fields' documented illnesses." Pl.'s Br. (Doc. 12) at 7 (emphasis in original). Plaintiff points out that while the ALJ noted "'the record is devoid of any objective x-ray or other evidence demonstrating that the claimant has an impairment of the neck or back that would be disabling' (Tr. 25)," Pl.'s Br. (Doc. 12) at 9, the ALJ did not order a consultative examination with x-rays of the lumbar and cervical spine as was requested by Plaintiff's counsel at the hearing.[6] *Id.* at 8-9.

At the administrative law judge hearing level, the ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. § 404.1546(c). The ALJ must assess a claimant's RFC "based on all of the relevant medical and other evidence[,]" and, in general, the claimant will be responsible for providing the evidence used to make a finding about the RFC. 20 C.F.R. § 404.1545(a)(3). While a consultative examination may be helpful to the ALJ in making an RFC determination, a consultative examination will be ordered only when the

---

[6] At the hearing, Plaitniff's attorney "request[ed] that a CE be performed with the x-rays of the

evidence as a whole, both medical and non-medical, is not sufficient to support a decision on the claim. 20 CFR § 404.1519a. *See also Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988) (the ALJ is not required to order a consultative examination, and has discretion to order such an exam only when necessary); *Sellers v. Barnhart*, 246 F. Supp. 2d 1201, 1210 (M.D. Ala. 2002) (same); *McCray v. Massanari*, 175 F. Supp. 2d 1329, 1338 (M.D. Ala. 2001) ("[I]t is within the ALJ's discretion to order a consultative examination where he determines one is warranted.").

The court finds that the ALJ's RFC is supported by the evidence of record in this case. First, the court notes that there already is a consultative examination in the record, performed by Dr. Johnston in July 2009. The ALJ discussed Dr. Johnston's consultative examination as follows:

> In terms of the claimant's alleged degenerative disc disease of the lumbar spine and cervical spine, Dr. Johnston . . . reported that examination of her neck revealed moderate stiffness and pain with diminished range of motion. Examination of her back revealed mild stiffness and pain on range of motion with minimal limitations. Range of motion overall was within normal limits, gait, station and heel to toe were normal. Motor strength was 5 out of 5. Dr. Johnston's diagnosis included DJD of the cervical spine with possible cervical disc disease, DJD of the LS spine, and obesity.

Tr. 25; 266-67. While Dr. Johnston diagnosed degenerative joint disease, he only found ***minimal limitations*** during his physical examination of Plaintiff. Thus, the court finds no error in the ALJ's analysis or failure to order imaging tests because, even assuming a diagnosis of degenerative joint disease, the consultative examination reveals that this

---

lumbar and cervical spine." Tr. 57.

condition causes only minimal limitations.  Further, the court notes that the question for the ALJ in determining Plaintiff's RFC is how her impairments cause limitations on her ability to work.  Plaintiff has failed to show that her impairments cause further limitations than those found by the ALJ and an imaging test would not change that.  The court also notes that Dr. Johnston's diagnosis appears to be persuaded by Plaintiff's alleged personal history of back problems.[7]

Moreover, in determining Plaintiff's limitations, the ALJ also noted Dr. Anderson's testimony, the Medical Expert, who opined that Plaintiff would be limited to the full range of light work.  Tr. 25; 52.[8]  The ALJ accorded "substantial weight" to Dr. Anderson's opinion.  Tr. 25.  The ALJ further noted Plaintiff's daily activities "are not limited to the extent one would expect given the complaints of disabling symptoms and limitations."  Tr. 26.  Indeed, there was inconsistency between Plaintiff's self-report of daily activities and her daughter's report.  *See* Tr. 22 (Plaintiff reported that:  she tried to take care of her personal needs and needed reminders to do so; she was able to do little

---

[7] Dr. Johnston's notes state "[t]his 41-year old female is complaining of disability due to DJD of the cervical and lumbar spine. . .The patient states that she had an MRI of her lower back and that she has a 'back disc.'"  Tr. 266.

[8] Dr. Anderson testified that Plaintiff "has intermittent and symptomatic treatment for generalized pain syndrome associated with a motor vehicle accident in 2003.  She's had other symptoms which are compatible with fibromyalgia.  She's had no significant treatment and no significant diagnostic testing done.  She has been noted to be obese without anyone weighing her.  She has significant mental health problems and I believe a significant amount of her physical symptoms are related to her mental health stressors.  The record that we have would not meet or equal such a listing of physical disability, in my view.  The restrictions would be based mostly on her allegations of pain.  I would suggest from her amended onset date in November '07 to the present she would be limited to a full range of light work activity."  Tr. 51-52.

household chores and washed a few dishes, but needed encouragement to do household chores; she prepared her own meals, which consisted of sandwiches and frozen dinners; and she does not spend time with others. On the other hand, her daughter reported that Plaintiff: had no problems with personal care; prepared her own meals daily and was able to do dishes; household chores took a few hours daily; watched TV and read; spent time with others; and talked to family weekly. (Exhibit 5E)). Thus, the court finds there was sufficient evidence on the record on which the ALJ could determine Plaintiff's RFC.

Plaintiff also argues that the ALJ "seemingly relied on the Physical Residual Functional Capacity Form of a Single Decision Maker. . . . In fact, the assessments are almost identical." Pl.'s Br. (Doc. 13) at 9. The extent of the ALJ's discussion of Ms. Simpson's assessment is as follows:

> On July 12, 2009, Jamie Simpson, an employee with Disability Determination Service (DDS), completed a Physical Summary and Mental Summary stating that the amount of information that was relevant for the time period before the expiration of the DLI was insufficient. The DLI had expired and there was not enough evidence in file to rate the case. (Exhibits 3F and 4F).
>
> On July 14, 2009, Jamie Simpson completed a Physical Residual Functional Capacity Assessment (PRFCA) and opined that the claimant could perform a range of light work. (Exhibit 7F).

Tr. 23. The ALJ clearly acknowledged Ms. Simpson was an SDM and not a physician and there is no indication that he considered her assessment a medical opinion. As the Commissioner points out, "nowhere in his decision did the ALJ assign any weight to Ms. Simpson's assessment." Def.'s Br. (Doc. 16) at 11. Moreover, the RFC assessment by

the ALJ is not identical to that of the SDM and reflects that the ALJ relied on the medical opinions of Dr. Johnston, Dr. Estock,[9] and Dr. Anderson, as well as records from East Central Mental Health Center (Exs. 9F and 14F). *See* Tr.21-26. The opinions of these physicians support the ALJ's finding that Plaintiff could perform a range of light work. Thus, there is no evidence the ALJ relied on the RFC assessment of the SDM, or considered the SDM's assessment a medical opinion, and, thus, Plaintiff's argument lacks merit. *See, e.g.*, *Carter v. Astrue*, 2012 WL 2135471, at *4 (M.D. Ala. June 13, 2012) (finding harmless error where an ALJ relied on a state agency RFC assessment he "acknowledge[d] . . . is that of a single decision-maker," and to which the ALJ assigned "'little weight' to the extent that it differ[ed] from his own conclusions[,]" instead choosing to "assign[ ] 'greater weight to the treating and examining physician[s'] reports," because "the ALJ's express reasoning does not suggest that he 'essentially adopted the State Agency RFC'") (citing *Siverio v. Comm'r of Soc. Sec.,* 461 F. App'x 869 (11th Cir. 2012) (finding the ALJ's reliance on SDM's RFC assessment was not harmless error because "[t]he ALJ's opinion shows not only that the ALJ labored under the mistaken belief that [the SDM]'s RFC assessment had been authored by a physician, but also that he gave [the SDM]'s RFC assessment 'significant weight.' The remaining record evidence does not provide substantial evidence for the finding that [the plaintiff]

---

[9] Dr. Estock completed a Psychiatric Review Technique Form (Tr. 276-89) and a Mental RFC Form (Tr. 298-301). A review of the ALJ's RFC determination reveals that he adopted the mental limitations set forth in Dr. Estock's Mental RFC. *See* Tr. 21 & 298-301.

was capable of performing medium work.")); *see also Stewart v. Astrue*, 2012 WL 1969318, at *6 (E.D. Pa. May 31, 2012) ("Even if there were a concern that the ALJ labored under the mistaken belief that the Physical RFC form at Exhibit 10F had been authored by a physician, the error would be harmless in light of the remaining record evidence providing substantial evidence for the finding that [the plaintiff] was capable of performing work at the light exertional level.") (citing *Siverio*, 461 F. App'x at 871-72)).

Accordingly, upon review of the record, the court finds that the ALJ's RFC is supported by substantial evidence, and Plaintiff's argument lacks merit.

### B. *Whether the ALJ improperly rejected Plaintiff's testimony concerning the effects and resulting limitations imposed by the combination of her medically determinable impairments.*

Next, Plaintiff argues that "the ALJ improperly rejected Ms. Fields' testimony concerning the effects and resulting limitations imposed by the combination of her medically determinable impairments." Pl.'s Br. (Doc. 13) at 10. Plaintiff contends "[a]lthough the ALJ appears to articulate some reasons for discrediting Ms. Fields' testimony regarding her pain, some of these reasons are contrary to the evidence and are not sufficiently specific as required by Eleventh Circuit law and Social Security Rulings." *Id*. at 12. Plaintiff first argues "the ALJ improperly discredited Ms. Fields for her failure to obtain treatment without considering her explanation for her lack of treatment," *Id*., which was that Plaintiff could not afford the treatment. Plaintiff further argues the ALJ improperly considered Plaintiff's "ability to perform daily activities, such as caring for

her own personal needs, performing basic household chores, and attending doctor appointments (Tr. 26)." *Id*. at 14.

"If a claimant offers subjective testimony concerning disabling pain or other symptoms, the ALJ must determine whether that testimony is credible." *Brown v. Comm'r of Soc. Sec.*, 425 F. App'x 813, 817 (11th Cir. 2011) (citing *Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir. 1991) (explaining that a claimant's subjective testimony must be accepted as true unless the ALJ "articulate[s] explicit and adequate reasons" for rejecting it). "One factor that the ALJ may consider is the level of treatment sought by the claimant." *Id.* (citing Social Security Regulation 96-7p at 7). "However, the ALJ may not draw an adverse inference from a claimant's lack of medical treatment without first considering the claimant's explanation for his failure to seek treatment." *Id.* The United States court of Appeals for the Eleventh Circuit has "held an ALJ's reasoning to be insufficient where the ALJ simply stated, without further elaboration, that the claimant's testimony 'was not credible to the extent alleged,' and did not give any reasons supporting that conclusion. *Id*. (quoting *Jones v. Bowen*, 810 F.2d 1001, 1004 (11th Cir. 1986)).

In this case, the ALJ determined Plaintiff's statements concerning the intensity, persistence, and limiting effects of [her] symptoms [were] not credible." Tr. 25. Aside from noting Plaintiff's conservative treatment, in making this determination, the ALJ also noted: 1) "the office notes from East Central Mental Health Mental Retardation indicate

13

that the claimant's mental condition improves when she is on medication" and she was stabilized and doing well as of May 5, 2009, Tr. 23; 2) Dr. Johnston's consultative examination found only mild limitations with respect to Plaintiff's alleged degenerative joint disease of the lumbar and cervical spine; 3) Dr. Estock opined Plaintiff had no more than "moderate" mental limitations in certain areas and that she was "capable of understanding, remembering, and carrying out simple instructions over an 8 hour workday with routine breaks. Can concentrate for two hour periods," Tr. 300; 4) with respect to her obesity, Plaintiff is mildly overweight, but it is expected that weight loss and exercise would improve her physical health and physical condition, Tr. 25-26; and 5) there were inconsistencies between Plaintiff's report of her daily activities and what her daughter reported Plaintiff was able to do on a daily basis. Thus, upon review of the record, the court finds that the ALJ offered sufficient reasons to support his determination that Plaintiff's testimony was not fully credible. *See, e.g.*, *Brown*, 425 F. App'x at 818 (finding the ALJ offered sufficient reasons to support finding the plaintiff's testimony was not credible because the ALJ explained plaintiff's "description of the intensity, persistence, and limiting effects of his symptoms was not supported by the medical evidence in the record"; "initial examination revealed no significant neurological impairment and that he received relatively conservative medical treatment;" and the consultative examiner did not find "significant limitations in his functioning or his ability to sustain an eight-hour work day.").

## VI. CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is AFFIRMED. A separate judgment will issue.

Done this 27th day of September, 2013.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE